NEW-YORK,
May, 1829.

Provost
v.
Calder.

---

<div align="center">PROVOST vs. CALDER.</div>

THIS was an action of covenant, tried at the Greene circuit, in September, 1825, before the Hon. WILLIAM A. DUER, one of the circuit judges.

A transfer of an estate, to which a privilege granted by lease is *appurtenant*, is sufficient evidence to charge him acquiring the principal estate with rent as *assignee* of the interest conveyed by the lease.

Where, in a grant of a tract of land, the grantor reserves to himself and his heirs the sole and exclusive right of a stream of water running through the same, and prohibits the grantee from erecting any hydraulic works on the stream, reserving the right to himself, and such grantor subsequently demises the privilege of erecting a dam and using the water to a lessee, reserving an annual rent, and afterwards makes his will and devises *all the privilege retained of the water of the stream*, such devise is good, and will pass the rent, the whole estate of the devisor in the premises being given by the will.

If the reservation in a grant and the covenant of the grantee taken together leave no rational doubt of the intent of the parties, then such intent must govern in the construction of the grant; as where a grantor reserves the right of a stream of water running through lands conveyed, and the grantee covenants not to erect any water works on the stream, the water, as well as the land, is conveyed, *except* the right of using water-power upon the premises, which is reserved to the grantor. Until the exercise of the right, however, the exception is inoperative, and the whole premises vest in the grantee, who may assert his right against any one but the grantor or his assignee.

A notice of special matter intended to be given in evidence on the trial of a cause by a defendant in a suit, may be subjoined to a plea of *non est factum* in an action of *covenant*.

The plaintiff claimed to recover three years' rent as due upon a lease executed by Augustin Provost to Josiah Bidwell, whose estate, it was alleged, had come to the defendant by assignment. In the declaration, it was alleged that Augustin Provost was seized in his demesne as of fee of certain messuages, tenements and freehold, and being so seized, he conveyed the same in fee to one Eleazer Knowles, reserving to himself, his heirs and assigns, the sole and exclusive right to a stream of water running through the same, and providing that the grantee should not erect or build any kind of water works whatever on said stream of water or creek, but the same was thereby reserved to the said Provost as aforesaid; that Josiah Bidwell afterwards, being seized of the premises conveyed to Knowles, took a lease of Provost of the privilege of erecting a dam across the said creek, with the privilege of using the water for clothier's business and a carding machine for the term of twenty years, at an annual rent of twenty dollars; that afterwards, by assignment, all the interest of Bidwell in the demised premises, with the appurtenances, came to the defendant, who entered upon the same, and was possessed thereof; that Augustin Provost, by his last will and testament, gave the demised premises to the plaintiff; that the executors of the said will assented to the bequest, and the plaintiff became possessed of the reversion; and that after the accruing of her estate, three years' rent became due and was in arrear, whereby the covenant was broken. There were two other counts in the declaration, in one of which it was alleged that Augustin Provost was seized of five hundred acres covered with water, called the *Busic creek*, and leased the same to Bidwell; and in the other, it was alleged that he was seized as of fee of a certain stream of water and the use thereof, called the Busic creek, and being so seized, demised the same to Bidwell.

The defendant, after craving oyer of the indenture to Bidwell, pleaded, 1. Non est factum; 2. That the interest of Bidwell did not come to and vest in the defendant; 3. That Augustin Provost did not make the devise alleged in the declaration; and 4. That his executors did not assent to the bequest: to which pleas was subjoined a notice that the de-

fendant would give in evidence that Augustin Provost was not seized of 500 acres of land under water, or entitled to the use of the stream called Busic creek; that no dam had been erected across the creek, by virtue of the demise or otherwise; that neither the rent or reversion reserved or created by the indenture to Bidwell was given or bequeathed to the plaintiff by Augustin Provost, nor have his executors assented to the bequest; and that the indenture to Bidwell had never been assigned to the defendant, nor had he at any time possessed the rights or privileges thereby granted.

On the trial of the cause, the following facts appeared: Letters patent were shewn to have been granted to Augustin Provost for a large tract of land in the county of Greene; on the 2d December, 1793, Augustin Provost conveyed in fee to Eleazer Knowles 323½ acres of land, excepting 16 acres of land for highways; and also excepting and reserving to himself, his heirs and assigns, "the sole and only right of the stream of water running through the above demised piece of land, and the party of the second part is not to erect or build any kind of water works whatsoever on said stream of water or creek, but the same I hereby reserve to myself as aforesaid." Previous to February, 1814, Josiah Bidwell had become the owner of eighty rods of land, part of the premises granted to Knowles, on which was a fulling mill and carding machine, which he occupied; in a treaty with John Morehouse for the sale of the same, Morehouse discovered that Bidwell used the water for his machinery under a verbal agreement with Augustin Provost, and refused to purchase, unless Bidwell would procure a lease for a term of years; Bidwell thereupon procured a lease from Provost, bearing date 10th February, 1814, whereby was demised to Bidwell, for the term of 20 years, "the privilege of erecting a dam across the creek called the Busic creek, at or near the fulling mill of Bidwell, with the privilege of using the water of said creek for the purpose of carrying on the clothier's and fulling business, and for a carding machine or machines," reserving an annual rent of twenty dollars. The water used for driving the fulling mill and carding machine was the privilege conveyed by the lease; Bidwell conveyed the eighty rods of

NEW-YORK, land by deed to Morehouse and one Roe, and delivered the
May, 1829. lease to them; they entered into possession, used the water,
Provost and paid rent to Provost; Roe conveyed his half to More-
v. house, and on the 18th November, 1819, Morehouse sold
Calder. the eighty rods of land to the defendant in this cause.
There was no assignment of the lease to Morehouse, Roe or
Calder. Morehouse stated that he would have delivered the
lease to Calder when he conveyed the premises to him, but
he forgot it, and afterwards it was worn out in his pocket.
Calder entered into possession of the eighty rods, and used
the water as it had been before used by Bidwell, &c. More-
house further testified that Calder, previous to his purchase,
had been an apprentice to him for several years, and knew
all about the premises, and he supposed knew that he, More-
house, paid rent to Provost. Morehouse said he would have
asked, and the premises would have been worth, $300 or
$400 more than he sold for, if they had not been subject to
the rent. The deed from Morehouse to Calder conveys the
eighty rods of land adjoining the Busic creek, together with
the appurtenances, &c. There is a dam across the creek,
which was built in 1811; the distance from it to the fulling
mill is about 30 rods; the water is conveyed to the mill by
means of troughs and a canal. The plaintiff proved the will
of Augustin Provost, containing a devise as follows: "I give
and devise to my said wife Ann all the privilege retained of
the water of the Busic creek which runs through my pat-
ents, that is, what may not have been alienated at the time of
my decease." Augustin Provost died in January, 1821, and
his executors assented and agreed to the bequest and devise
made to the plaintiff. A verdict was taken for the plaintiff
for the rent in arrear, subject to the opinion of the supreme
court.

*D. B. Tallmadge*, for plaintiff. The devise to the plain-
tiff of all the privilege retained of the water of the creek,
gives her a right to maintain this action. The defendant is
liable to the action, although no formal assignment of the
privileges granted by the lease to Bidwell was shewn. The
privilege of using the water was an *appurtenant* to the fulling-

mill that was conveyed to the defendant, and the title to the incident passed by the conveyance of the principal thing. (*Cro. Jac.* 121. *Comyn's Dig. Grant, E.* 9. 6 *Mod.* 1 and 4. 15 *Johns. R.* 454. 5 *Serg. & Rawle,* 107. 1 *Johns. C.* 286.) Assignees are bound by all covenants reserved in grants assigned. (*Cruise's Dig. tit. Deed,* ch. 5, § 1, 50, ch. 25, § 22, 29, 24, 32, 33. 1 *Eq. Cas. Abr.* 27.)

The defendant was not entitled to give any evidence under the notice attached to his plea. Notice of special matter can be given only with a plea of the general issue : in *covenant* there is no general issue.

*Bronk & Van Vechten,* for defendant, made the following points : 1. By the deed from Provost to Knowles all the right and title of Provost to the use of the water passed ; (3 *Black. Comm.* 18, 19 ; 11 *Johns. R.* 192 ; 13 *id.* 217 ; 9 *East,* 15 ; *Sheppard's Touch.* 79, 80, 81, 431 ; *Plowd.* 19 ; 4 *Johns. R.* 81 ; 8 *id.* 406 ; 5 *Co.* 3 ; *Co. Litt.* 183, *a.* ; *Dyer,* 264, *b.* ; *Perkins,* 527, 626.) 2. The defendant is not estopped by the lease to Bidwell from denying the right of Provost ; (3 *Saund.* 298 ; *Shep. Touch.* 229 ; 4 *Johns. R.* 83 ; 1 *Campb. N. P.* 317 ; *Yelv.* 143 ; 5 *Cowen,* 219 ; *Co. Litt.* 4, *b.*) 3. The defendant is not liable as assignee of the lease ; (1 *R. L.* 75, § 10 ; 1 *Campb.* 317 ; *Cowper,* 766 ; 4 *Johns. R.* 83.) 4. The rent of the lease is not bequeathed to the plaintiff by the will of Augustin Provost ; (*Co. Litt.* 47, *a.* ; *Comyn's Dig. tit. Rent, B.* 3 ; 3 *Saund.* 303.)

*By the Court,* SAVAGE, Ch. J. It was objected on the argument, that as there was, properly speaking, no general issue in covenant, no evidence could be given under the notice subjoined to the plea of *non est factum.* But this mode of pleading has been long used, and as there is no plea more appropriate, we have permitted it. Unless this plea be considered the general issue for the purpose of attaching to it a notice, the defendant in covenant must always plead specially. This question was raised and discussed, and decided in the case of *Demarest* v. *Willard,* (8 *Cowen,* 206,) though not noticed in the report of that case. The evidence given

in this case is sufficient to support the verdict for the plaintiff. To prove the defendant assignee, it is enough to shew either an assignment, or occupancy of the premises, or payment of rent by him. (2 *Starkie's Ev.* 437.) In this case there was no actual assignment of the lease itself, but there was a conveyance of the title of the original lessee, Bidwell, through Morehouse, to the ground, with the appurtenances. Bidwell owned the land and the mill, and having acquired the water privilege, it passed as *appurtenant* to the mill. (5 *Serg. & Rawle,* 107.) The case of *Botting* v. *Martin,* (1 *Campb.* 217,) shewing that a parol assignment of a lease is void, is not applicable. Evidence that the defendant had acquired the title of Bidwell would undoubtedly be sufficient to constitute him assignee if he wished to prosecute for a breach of covenant by the lessor ; and if so, it should also subject him to the duties and obligations resting upon him in that character. Possession alone is sufficient *prima facie ;* and to exonerate himself from his liability as assignee, the defendant should shew that such is not his true character, but that he is under-tenant only.

Another issue raised by one of the special pleas is, whether Augustin Provost devised to the plaintiff the demised premises. The will gives to her " all the privilege retained of the water of the Busic creek, which runs through my patents ; that is, what may not have been alienated at the time of my decease." The will was given in evidence. It was shewn also that the executors assented to the devise, and that the land conveyed by the testator to Knowles was patented to him. In my judgment, the words of the will are broad enough to embrace the rent due on the lease in question. It would have given the property excepted and reserved had it not been leased ; and giving that, it must surely embrace the rents issuing from it. Not that a grant of a reversion would carry the rent, the contrary is asserted in *Co. Litt.* 47, *a.,* but the estate is given to the plaintiff; that estate is encumbered by a lease, the devisee takes it subject to such incumbrance, and must be entitled to all its benefits. The language of the will is, " all the privilege retained of the

water." It is not part of the estate, not the reversion, nor the rent, but all the privilege ; that is, the whole estate.

This brings me to the consideration of what seem to me the principal points in the case : 1. Whether the defendant is not estopped from denying the plaintiff's title to the rent, or rather the right of Augustin Provost ; and 2. If such defence were admissible, whether Augustin Provost had any interest in the subject matter of the lease.

If I am correct in the conclusion that the defendant is assignee of the lessee, and that the plaintiff is the devisee of the premises leased, then it follows that the plaintiff represents the lessor and the defendant the lessee, each enjoying the rights and subject to the liabilities of the person represented. It is then the familiar case of lessor and lessee, grantor and grantee ; and no principle is better settled than that the tenant cannot dispute the title of his landlord in an action founded upon the contract between them. For this no authority need be cited. But if it were otherwise, and the question was open, then I will inquire what estate passed to Knowles, and what was the effect of the exception and reservation in the deed.

It is contended by the defendant's counsel that the water passed with the land to Knowles ; that water is not severable from the land under the water, and therefore passed with it ; that an exception must not be of part of the thing granted, such exception being void. In *Sheppard's Touchstone,* 79, 80, (*Co. Litt.* 47, *a.,*) it is said that an exception must not be part of the thing granted, but incident to the grant. (See also *Dyer,* 264, *b.,* 4 *Mod.* 11, 12.) Thus a man cannot grant an estase and reserve a part of it, as a conveyance in fee, reserving an estate for life ; he cannot grant black acre and white acre, reserving white acre ; but he may grant a messuage with the appurtenances, reserving one of them. So, too, he may grant a tract of land, reserving all mines. But according to the doctrine in *Sheppard,* if one grant all gold and silver mines, reserving the silver mines, the reservation is void. A grant of a tract of land reserving all mill sites is valid, and the reservation is valid. So if water may be the subject of a grant separate from the land, a reserva-

NEW-YORK,
May, 1829.

Provost
v.
Calder.

tion of the water, it is said, reserves only a *piscary*. The term land, in the legal signification, comprehendeth any ground, soil or earth whatsoever: as meadows, pastures, woods, moors, waters, marshes, furzes and heath. (*Co. Litt.* 4, *a.*) If a man grant *aquam suam*, the soil shall not pass, but only a *piscary*. (*Co. Litt.* 4, *a.* 5 *Cowen*, 219.) It is also a principle well established, that exceptions in a deed are to be construed most favorably to the grantee. (8 *Johns. R.* 406. 9 *East*, 15.) These principles being established, the deed in question must be tested by them. The grant to Knowles is of 323 ½ acres, " excepting and reserving to myself, my heirs and assigns, the sole and only right of the stream of water running through the above demised piece of land; and the party of the second part is not to erect or build any kind of water works whatsoever on said stream or creek, but the same I hereby reserve to myself as aforesaid." The first question naturally arising is, what is excepted ? Is it a fishery ? Is it the water simply, or the privilege of using it ? In cases of doubt, the exception is to be construed most favorably to the grantee ; if the reservation and the covenant of the grantee taken together leave no room for rational doubt of the intent of the parties, then such intent must govern. The grantor reserves the right of the stream of water, and the grantee covenants not to erect any water works on said stream, but the same is reserved to the grantor ; the plain common sense of which is, that the grantor conveys the water as well as the land for every purpose except the right of using water power upon the premises granted, which right he reserves. So the parties understood their agreement ; for we find Bidwell making a contract with Provost for the use of the privilege reserved, first by parol and afterwards by lease.

There is nothing in the cases cited, inconsistent with the views I have taken of this case, provided I am right in the construction to be given to the deed from Provost to Knowles. The case of *Thompson v. Gregory*, (4 *Johns. R.* 81,) shews that such an exception in a deed is good : it is indeed said, that considered strictly as an exception, it is void for uncertainty ; but this must be taken in connection with what pre-

cedes it, and then it is merely that until the grantor exer- <span>NEW-YORK,</span> cises his right and builds his mills and dams, the exception is <span>May, 1829.</span> inoperative, and the whole premises vest in the grantee, who <span>Payne</span> may maintain trespass against any one, but the grantor or his <span>v.</span> <span>Lansing.</span> assignee by deed, who shall attempt to exercise the right reserved to the grantor. The case of *Jackson* v. *Lawrence*, (11 *Johns. R.* 191,) shews that an exception of mill seats means natural sites for mills, and not artificial ones. That is not applicable here ; for the reservation, according to my construction, applies to the possibility of using the water for any kind of machinery ; that question was settled by the parties to the lease. When the lessee took the lease, he acknowledged the title of the lessor ; and the defendant coming in under the lessee is in no better situation. On all the points in the case, therefore, my opinion is in favor of the plaintiff.

<div align="center">Judgment for plaintiff.</div>