WILLIAM B. WALL et al. v. CHARLES T. WALL, Executor, &c.

1. PROBATE COURT: JURISDICTION.—The Probate Court has jurisdiction to set aside the probate of a will, upon petition of those interested, without awarding an issue of *devisavit vel non*, to be tried by a jury.

2. PROBATE OF A WILL: EFFECT OF.—The probate of a will, in common form, upon the *ex parte* application of the executor, is merely an incipient step to give the court jurisdiction of the matter, and is not conclusive on the parties interested, but may be opened and set aside upon sufficient legal grounds. *Hamberlin* v. *Terry,* 7 How. 148; *Gurner* v. *Lansford,* 12 S. & M. 560; *Cowder* v. *Dobyns,* 5 Ib. 82.

3. WILL AND DEED: DISTINCTION BETWEEN.—In determining whether an instrument be a deed or will, the main question is, did the maker intend to convey any estate or *interest* whatever, to vest before his death, and upon the execution of the paper? or, on the other hand, did he intend that all the interest and estate should take effect *only* after his death; if the former, it is a deed, if the latter, a will; and it is immaterial whether he calls it a will or deed, the instrument will have operation according to its legal effect. *Habergam* v. *Vincent,* 2 Ves. Jr. 204, 231; *Hester* v. *Young,* 2 Kelly, (Ga.) 41. *Harrington* v. *Harrington,* 2 How. 720.

4. SAME.—A voluntary instrument, purporting on its face to be a deed, by which

Wall et al. *v.* Wall.

land and slaves are conveyed, by terms in the present tense, but reserving a power of revocation to the maker, to be exercised in a certain specified mode, at any time during his life, and also declaring that it should not take effect as to the delivery of the property until after the maker's death, vests in the donees an estate, *in præsenti*, to be enjoyed *in futuro*, and is, therefore, a deed, and not a will.

5. DEED: DELIVERY OF.—As between grantor and grantee, the fact of the retention of the deed in the possession of the grantor, if he intend it to be considered as executed and delivered, will not render it invalid for want of delivery. *Clavering* v. *Clavering*, 2 Vernon, 473; *Souverbye* v. *Arden*, 1 Johns. Ch. R. 256; 1 Jarman on Wills, 17; *Doe* v. *Knight*, 5 Barn. & Cress. 671.

6. DEED: ACCEPTANCE OF.—If a deed be entirely for the benefit of the donee, his acceptance of it will be presumed. 2 Greenl. Ev. ? 297.

7. DEED VOLUNTARY: COVENANT TO STAND SEISED.—A voluntary deed, conveying a present interest in land to the brothers and sisters of the grantor, though not to take effect in possession until after his death, is good, as a covenant to stand seised to their use. *Jackson* v. *Smart*, 20 Johns. R. 87; *Jackson* v. *M'Kenzie*, 3 Wend. 233; *Rogers* v. *Eagle Fire Co.*, 9 Wend. 611.

8. VOLUNTARY DEED: DELIVERY OF PERSONALTY.—A voluntary deed, conveying chattels to a donee, reserving the use and possession to the donor during his life, is valid without the intervention of a trustee. 3 Littell, 276; 7 Harr. & Johns. 257; 2 Yerg. 582; 1 Murphy, (N. C.) 466.

APPEAL from the Probate Court of Amité county. Hon. R. M. Neilson, judge.

The facts of this case are sufficiently stated in the opinion of the court.

*Geo. S. Yerger*, for appellants, argued the cause orally, but filed no brief.

*D. Mayes*, for defendants in error.

*Geo. L. Potter*, on same side.

The question is, whether a certain paper, somewhat a deed of gift in form, is the testamentary act of Jehu Wall. I maintain the affirmative.

The form of the instrument is immaterial; it may be no less a will, because it is in form, a deed or letter, &c. 10 S. & M. 623; 2 How. 701; 4 Eccl. R. 108.

The true test is, whether the instrument shows an intent to

dispose of the property *after the death* of the party. 6 Cruise, Dig. Devise, 7, § 15; 1 Jarm. Wills, a 11, and n. 18, 19; 4 Eccl. R. 108; 2 Strobh. Eq. 348, n.; 2 How. 701; 2 Kelly, R. 44, *et seq.*

Here a testamentary intent is plainly declared by these words in the instrument:

" The deed to take effect as far as regards *the handing over* of the property *at my death;* and I reserve the right *to revoke it* at any time during my life, by filing in the clerk's office a written .revocation under my hand and seal; and I do hereby make known and declare, that the signing, sealing and delivery of this deed, and *placing the same amongst my papers,* is intended by me as *a delivery of said property at my death,* and *to take effect at that time.*"

The donor places the deed among his papers, makes *no delivery,* and therefore leaves it *inchoate* as a deed, and declares the pur- pose of so retaining possession of the paper to be, that it shall take effect *at his death.* He also retained possession of the property. Under such circumstances, it is vain to call the paper a *deed. Stilwell* v. *Hubbard,* 20 Wend. 44.

If it be said the answer admits a delivery, we deny it. The executor admits the paper was handed to him *for safe keeping,* and was returned by him to the donor. To constitute a delivery, there must be an *intent* by the grantor to deliver, and an *accept- ance* by the grantee, of the deed as a conveyance, thenceforth be- longing to the latter, both of which are wanting here. Moreover, the delivery, if such it be deemed, was to a donee of slaves only, and would not enure to the donees of the lands. It is vain to say the delivery to Charles Wall, was intended as a delivery to the other donees.

Further, a present interest could not be transferred by force of the statute, Hutch. Code, 610, § 28, for that would be contrary to the declared intent of the donor.

If it be said the words on which we rely are null, we reply, they are not repugnant; they but declare when the instrument is to take effect. The settled rule is, that if possible, effect shall be given to the whole instrument, and to every word of it.

In this case there is no delivery of deed or property ; a declared intent to retain both during the life of the donor ; a purpose that shall take effect only at his death ; and a power of revocation expressly reserved.

With Sir John Nicoll, in *Thorold* v. *Thorold*, 1 Eccl. R. 14, we say, " It cannot take effect as a deed ; *it is not irrevocable ; it is only to be consummated by death.*"

HANDY, J., delivered the opinion of the court.

The material facts presented by the record in this case, are briefly these :—

Jehu Wall, of Amité county, on the 11th February, 1845, executed an instrument in writing of the following tenor : " For and in consideration of the good will and affection that I have for, and bear towards my brothers and sisters, and in consideration of the further sum of one dollar to me in hand paid by each, the receipt whereof I do hereby acknowledge, and for other good causes and services to me rendered, I do give, grant, bargain, sell, alien and convey to each of the following named brothers and sisters, the following named property." And after specifying what was conveyed to each of them, the instrument concludes as follows : " All of the aforesaid property I do hereby entail to my aforesaid brothers and sisters, to them and their heirs, in and for their own personal use and benefit, and not to be disposed of during their lifetime, but to be used for the benefit of raising each of their families—the deed to take effect, as far as regards the handing over of the property, at my death ; and I reserve to myself the right to revoke it at any time during my life, by filing in the clerk's office a written revocation, under my hand and seal.   And I do hereby make known and declare that the signing, sealing and delivery of this deed, and placing the same amongst my papers, is intended by me as a delivery of said property at my death, and to take effect at that time. Signed, sealed and delivered, the 11th day of February, 1845.

" JEHU WALL, [L. S.]"

This instrument was formally acknowledged by Jehu Wall on the day of its date, before a justice of the peace, to be his act and

deed, and shortly thereafter, it was delivered by him to his brother Charles J. Wall, together with his last will and testament, which bore date the 11th March, 1845, with directions to keep them safely. He subsequently called upon his brother for the papers, saying that he would return them, and his brother delivered them to him, and they were not returned to his brother. But when the testator was in his last illness, and absent from home, he wrote to his brother, stating, in expectation of his death, that the instrument which he called a deed was among his valuable papers at home, in a certain place which he described, and requesting him to get the papers and have their provisions carried into effect, and after his death his brother called upon his widow, and they found the will and the paper in question in this case, where the testator had said in his letter they were deposited.

John Wall died in the year 1852 without issue, leaving a widow, having appointed his brother Charles J. Wall, his executor, by the regular will above mentioned, which will, as well as the instrument above described, dated 11th February, 1845, was in due form admitted to probate by the Probate Court of Amité county, at March term, 1852, as the last will and testament of Jehu Wall.

In July, 1855, the brothers and sisters filed their petition in the Probate Court, alleging that the instrument dated 11th February, 1845, was erroneously admitted to probate as a testamentary paper, and seeking to have the probate of it set aside and annulled. Upon the hearing of the case upon the pleadings and proofs showing the foregoing facts, the petition was dismissed, and the probate established; from which decree the case is brought here by appeal.

The first question to be considered is, whether the Probate Court had jurisdiction of the subject-matter of the petition. It is contended, that after the will had been admitted to probate *in common form*, its validity could only be impeached upon a petition filed, and an issue awarded of *devisavit vel non*, to be *tried by a jury*, and that such is the provision of the act of 1821. Hutch. Code, 651, § 30. But we do not consider this a just view of the statute. It is undoubtedly true, that the probate *in common form*, as it is called, is merely an incipient step to be taken in order to give the court jurisdiction of the matter, and is not conclusive upon the

parties interested in the estate, but may be opened and set aside upon sufficient legal grounds shown. This is the rule in the ecclesiastical courts in England, 1 Wms. Ex'ors, 376, 391, and is held to be the rule here. *Hamberlin* v. *Terry*, 7 How. 148; *Garner* v. *Landsford*, 12 S. &. M. 560; *Cowder* v. *Dobyns*, 5 Ib. 82. It would be strange that this right should be capable of being exercised solely by means of an issue of fact to be tried by a jury; for the grounds of objection to the validity of the alleged will might be purely of a legal character, involving no contested point of fact to be determined by a jury; and in such a case, it would be absurd to say, that the Probate Court would not have power, upon the petition of the heir or distributee, to set aside its probate of an instrument which appeared by facts not denied, not to be of a testamentary character. And this construction has already been recognized in the cases above cited.

Let us proceed, then, to consider the principal question in the case, whether the instrument before us is in law a deed or a will.

The determination of the legal character of instruments of this kind, depends mainly upon the question, whether the maker intended to convey any estate or interest to vest before his death, and upon the execution of the paper, or on the other hand, whether all interest and estate whatever, were to take effect only after his death. For the most part, that is governed by the provisions of the instrument, which may be sometimes aided by the concurrent circumstances of its execution; and the rule is well established, that whatever may be the form of the instrument or the circumstances of its execution and delivery, if upon the whole, the intention was, that it should have only a future operation after death, it must be held to be a will. And in such case, it is immaterial, whether the maker calls it a deed or a will; for it must nevertheless, have that effect which the law gives to it. *Habergam* v. *Vincent*, 2 Ves. Jr. 204, 231; *Hester* v. *Young*, 2 Kelly, (Ga.) 41; *Harrington* v. *Harrington*, 2 How. 720.

We must, therefore, in the first place, examine the terms of this instrument, as indicating its legal character.

The first feature in it to be observed is, that it purports to be a deed of conveyance, in consideration of love and affection, and

also for a nominal money consideration. In this respect, it should rather be regarded as a deed of gift, than as one of bargain and sale ; and from the statement of the consideration, it would appear that the money part of it was inserted under the idea that it was necessary to give validity to it, when the instrument was really intended to be a gift to his brothers and sisters. *McKee* v. *Moore*, 5 S. & M. 243. But however this may be, it is in form a deed of conveyance.

The next thing to be noticed is, that it was acknowledged as a deed duly "executed and *delivered;*" and in conformity to the mode of delivery, stated in the instrument as the one adopted by him, and which was intended to be sufficient for that purpose ; it was found after his death, "placed among his papers;" and shortly before his death he gave directions, as to the place where it was deposited, and as to its being carried into effect.

This being a voluntary settlement, and the rights of creditors or subsequent purchasers not being involved, the mere fact of the maker's retaining the instrument in his own keeping, intending that it should be considered as executed and delivered, will not render it invalid for want of delivery. *Clavering* v. *Clavering*, 2 Vernon, 473 ; *Souverbye* v. *Arden*, 1 Johns. Ch. R. 256 ; 1 Jarman on Wills, 17 ; *Doe* v. *Knight*, 5 Barn. & Cres. 671. And as to the point of acceptance, that will be presumed from the fact that the settlement operates entirely to the benefit of the donees. 2 Greenl. Evid. § 297, and cases there cited.

Thus far the instrument has the essential characteristics of a deed, and must be so considered, unless its other provisions give it a different character. It is insisted that other parts of the instrument show clearly that it was intended to be testamentary. The part of it mainly relied on as showing this, is that "declaring that the signing, sealing and delivery of this deed, and placing the same amongst my papers, is intended by me as a delivery of said property at my death, and to take effect at that time." If the legal character of the instrument depended entirely upon this provision, it would be difficult to avoid the conclusion, that it was not intended to take effect in any respect, until the maker's death. But its character must be determined upon a consideration of all its parts,

VOL. I.—7

comparing one part with another, in order to ascertain the purpose which the party had in view, and the mode by which he intended to accomplish it.

In the previous parts of the instrument, he had first conveyed the property to the donees in *præsenti*, and declared his object in making the conveyance, and then follows this limitation : " The deed to take effect, as far as regards the handing over of the property, at my death ; and I reserve to myself the right to revoke it, at any time during my life, by filing in the clerk's office, a written revocation under my hand and seal." The legal effect of the deed, as an operative conveyance, is thus fully recognized, and the only limitations annexed to it are, that, as to the right of possession of the property, it should take effect at his death, and the settlement being voluntary, that he reserved the right to revoke it during his life. In all other respects, the deed took effect immediately, as a conveyance *in præsenti* of property, to be enjoyed *in futuro*. That the party was aware of the legal consequences of the execution of the instrument, and that the estate conveyed would stand upon a different footing from what it would if given by will, is plain from the fact, that he reserves the power to revoke it, in a particular mode specified, during his life, which would have been unnecessary had he intended merely to make a testamentary bequest of the property to his brothers and sisters, which he could have cancelled at any time. He must, therefore, have intended to do something more than could be done by will, and that could only be to give a present right of future enjoyment, subject to be defeated only in the specified mode.

Taking that part of the instrument by which the deed was " to take effect, as far as regards the handing over of the property, at his death," in connection with the subsequent part, declaring that the execution of the deed, and placing it amongst his papers, was " intended as a delivery of the property at his death, and to take effect at that time," we think that the latter provision must be understood to mean that the instrument, " *as to the delivery of the property,*" should take effect at his death, and not that it should not take effect, in any other respect, until his death. The purpose of the last clause in the instrument appears to be to declare,

first, what he intended should be taken as evidence of his execution of the deed, and secondly, when the property should be delivered under it. This construction renders the two provisions above mentioned harmonious : it is consistent with the idea that the instrument was intended in truth to be, what it purports to be on its face, a deed, and that it was intended to give to it a greater effect than a will would have had. If such was not his intention, it is difficult to perceive why he should not embody the provisions of it in his will, which was made just one month after the date of the deed, and why he should conclude himself from the right of disposing of the property by will. But in that will no reference is made to it, nor is any of the property embraced in it disposed of by the will. And he continued until his death to treat the instrument as a deed, subject only to his right of revocation reserved in it.

We are, therefore, of opinion, that it was a deed of conveyance of the property embraced in it, subject to the life estate of the donor. And it only remains to consider, whether a deed conveying an estate, to take effect in possession at the death of the grantor, is valid.

It is certainly not necessary to the validity of a deed, that it should convey an estate in immediate possession ; but it is necessary that it should take effect in interest upon its execution, though the right of possession or of enjoyment may not take place until the happening of a future event.

As to the real estate in this case, the deed was valid as a covenant to stand seised to the use of the donees, and upon the determination of the life estate reserved to the donor, the estate vested in possession in the donees. *Jackson* v. *Swart*, 20 Johns. 87 ; *Jackson* v. *M'Kenny*, 3 Wend. 233 ; *Rogers* v. *Eagle Fire Co.*, 9 Ib. 611.

With regard to the personal estate, the rule is generally held by the courts in this county, that a deed conveying chattels to a donee, reserving the possession and use of the property to the donor during his life, is valid, though the deed be not made to a trustee for the parties in interest. *Banks* v. *Marberry*, 3 Littell, 276 ; *Bohn* v. *Headley*, 7 Har. & Johns. 257 ; *Cains* v. *Marly*, 2 Yerger, 582 ; *Duncan* v. *Self's Admr's*, 1 Murph. (N. C.) 466.

Upon the whole, we consider that this deed conveyed the present right to the property, to be enjoyed in possession at the donor's death, and subject to his power to annul it in the way limited in the deed.   This was a substantial right in the donees, which excluded the general power of alienation by the donor, and of revocation in any other mode than that prescribed in the deed. And in this consists the difference between such a conveyance and a will ; that by the former a present interest vests, which will take place in possession *in futuro*, unless defeated in the mode and according to the terms specified in the conveyance; and in the latter, no right, estate, or interest whatever vests, until the death of the testator.   In the one case, the conveyance takes effect *in præsenti*, to a certain extent, in the other it has no effect whatever, until the death of the testator.

If these views be correct, the instrument in question here was a deed, and not capable of probate as a will, and the petition to set aside the probate should have been sustained, and a decree rendered accordingly.

The decree is therefore reversed, and a decree ordered here, setting aside the probate.